UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ERIC D. SMITH, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | No. 3:04cv0010 AS |
| ) | |
| CARRASCO, and ) | |
| D. MILLER, ) | |
| ) | |
| Defendants ) | |

*MEMORANDUM, OPINION AND ORDER*

The issue of anarchism has raised its ugly face again, this time in a prison context. Throughout the nineteenth and twentieth centuries, the ideas under the rubric of anarchism (without government) have caused great debates in intellectual ivory towers as well as in violent conflict in the streets. A French philosophy Pierre Joseph Proudhon is generally thought to be the secular patron saint of this bundle of ideas. These ideas were taken to the street in a violent confrontation in the Russian Revolution under the leadership of Mikhail Bukanin. Czar Alexander II of Russia, Empress Elizabeth of Austria. and President William McKinley were each assassinated by a proclaimed anarchist in the late nineteenth and very early twentieth century. In fact, after the McKinley assassination the Congress passed statute barring anarchists from entering the United States. In fact, anarchist ideas were still at play in the Spanish Civil War in the 1930's. In the United States in the 1920's, the issue again became front page in the so-called Sacco-Vanzetti case. No less a personage than Professor Felix Frankfurter considered the philosophical anarchist background for the execution of

these two Italian immigrants in 1927. [1]

Once again, these concepts raised their ugly heads in the context of a state-operated prison. The question here focuses on whether or not prison officials at the Indiana State Prison are authorized to confiscate anarchist materials from inmates incarcerated there. The question narrows somewhat to a determination of whether that confiscation was within constitutional authority under *O'Lone v. Estate of Shabazz,* 482 U.S. 342 (1987), and *Turner v. Safley*, 482 U.S. 78 (1987).

A good bit of sorting needs to be done. There is no question that a prisoner may have a wide range of philosophical beliefs. *See Childs v. Duckworth*, 509 F.Supp. 1254 (N.D. Ind. 1981), *aff'd*, 705 F.2d 915 (7th Cir. 1983). That is not the issue here and generally a prisoner cannot be punished for purely private philosophical and religious beliefs. *See Reed v. Faulkner*, 842 F.2d 960 (7th Cir. 1988). That is not the issue here. At the other side of the coin is whether a prisoner can be inhibited from taking violent action that is reflective of such anarchist philosophical belief. Such violent action can surely be inhibited. That is not the focus here. In purely simplistic terms, it <u>might</u> be possible for a prisoner to possess materials which advocate some form of violence in terms of a philosophical predicate and prison officials might be inhibited by the Constitution of the United States and the First Amendment thereof from confiscating such materials. In explicit terms, the question may turn on whether

---

[1] Frankfurter, Felix, <u>The Case of Sacco and Vanzetti</u>, Boston, Little, Brown and Company (1927). For a basic history of anarchism, *see* Avrich, Paul, <u>Anarchist Voices: An Oral History of Anarchism in America</u>, Princeton University Press (1996).

the mere possession of anarchist literature that advocates violence presents a clear and present danger under *Turner* and *Shabazz* to the security of the prison authorizing the confiscation of the materials in question. This court has looked closely at the materials provided here by this pro se plaintiff, and does not find advocacy of violence. To the contrary, there is a wide variety of non-violent actions suggested. There are no so-called "fighting words" here. *Chaplinsky v. State of New Hampshire*, 315 U.S. 568 (1942) and no chance for the species of violence reflected in *Feiner v. New York*, 340 U.S. 315 (1951).

The factual setting here is vastly different from that in *Whitney v. California*, 274 U.S. 357 (1927) even when seen through the eyes to Justice Brandeis's concurring opinion:

> "But even advocacy of violation, however reprehensible morally, is not a justification for denying free speech where the advocacy falls short of incitement and there is nothing to indicate that the advocacy would be immediately acted on. The wide difference between advocacy and incitement, between preparation and attempt, between assembling and conspiracy, must be borne in mind. In order to support a finding of clear and present danger it must be shown either that immediate serious violence was to be expected or was advocated, or that the past conduct furnished reason to believe that such advocacy was then contemplated."

*See also United States v. Lovett*, 328 U.S. 303 (1946). That is the central point of this case and is the central question which needs to be decided on the summary judgment motion filed by the defendants.

Summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there exists no genuine issue

3

as to any material fact and that the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c); *Celotex Corp v. Catrett*, 477 U.S. 317 (1986);  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Bragg v. Navistar Int'l Trans. Corp.*, 164 F.3d 373 (7th Cir. 1998).  *Celotex* addressed the initial burdens of the parties under Rule 56, and *Anderson* addressed the standards under which the record is to be analyzed within the structure of Rule 56.

The initial burden is on the moving party to demonstrate, "with or without supporting affidavits," the absence of a genuine issue of material fact and that judgment as a matter of law should be granted in the moving party's favor.  *Celotex*, 477 U.S. at 324  (quoting FED.R.CIV.P. 56); *Larimer v. Dayton Hudson Corp.*, 137 F.3d 497 (7th Cir. 1998).  A question of material fact is a question which will be outcome determinative of an issue in the case.  The Supreme Court has instructed that the facts material in a specific case shall be determined by the substantive law controlling the given case or issue. *Anderson*, 477 U.S. at 248.  Once the moving party has met the initial burden, the opposing party must "go beyond the pleadings" and "designate 'specific facts shows that there is a genuine [material] issue for trial.'"  *Id*.  The nonmoving party cannot rest on its pleadings, *Weicherding v. Riegel*, 160 F.3d 1139 (7th Cir. 1998); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918 (7th Cir. 1994);  nor may that party rely upon conclusory allegations in affidavits.  *Smith v. Shawnee Library Sys.*, 60 F.3d 317, 320 (7th Cir. 1995).

During its summary judgment analysis, the court must construe the facts and draw all

reasonable inferences in the light most favorable to the nonmoving party. *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560 (7th Cir. 1996). Furthermore, it is required to analyze summary judgment motions under the standard of proof relevant to the case or issue. *Anderson*, 477 U.S. at 252-55. Applying the above standard, this Court addresses defendants' motion.

While the question presented here is a very close one, and it may be one on which the prison authorities will later prevail. There needs to be a more extensive factual record. To determine the possible collision here between the values that inhere in the First Amendment of the Constitution of the United States and the authority of prison officials as enunciated in *Turner* and *Shabazz*, more is needed. As indicated recently in an excellent opinion by Chief Judge Flaum in *Dole v. Chand.er,* No. 05-1868 (7th Cir. February 24, 2006), great care must be taken. *But see Pinkston v. Madry*, No. 03-2973 (7th Cir. March 14, 2006). In any trial of this case, this court will attempt to appoint counsel for this plaintiff and will make every effort to keep this case as narrowly confined as possible to the exact issue involved. Although it is a close case, there is enough here, if only barely enough, to keep the courthouse doors open for this claim which necessarily involves overruling and denying the defendants' motion.

The motion for summary judgment is thus **DENIED**. **IT IS SO ORDERED**.

**DATED:** March 24, 2006

                                         **S/ ALLEN SHARP**
                                         **ALLEN SHARP, JUDGE**
                                         **UNITED STATES DISTRICT COURT**